UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER A.F.,

                              Plaintiff,

                                                      **DECISION AND ORDER**
          v.                                          23-CV-637-A

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                              Defendant.

## I.      INTRODUCTION

Plaintiff Jenneifer A.F. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. # 6) and the Commissioner (Dkt. # 7) have filed cross-motions for judgment on the pleadings. Plaintiff replied. (Dkt. # 8). For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

### A.  Procedural History

On January 19, 2021, Plaintiff filed an application for SSI alleging disability beginning on October 3, 2020.  Her claim for disability was based on the following

illnesses, injuries, and conditions: post-traumatic stress disorder (PTSD); vertigo; loss of hearing; and migraines. T. 69.[1]

Plaintiff's claim was initially denied on June 16, 2021, and upon reconsideration on August 25, 2021. T. 110, 120. Plaintiff filed a written request for a hearing on September 23, 2021. T. 130. On August 9, 2022, Administrative Law Judge ("ALJ") Eric Eklund held a hearing at which both Plaintiff and a vocational expert testified T. 34-67. *Id*. At the hearing, Plaintiff requested a closed period of disability for the period from October 3, 2020, through December 13, 2021, the date on which Plaintiff returned to work. T. 40. The ALJ issued an unfavorable decision on August 22, 2022. T. 12-33.  On May 5, 2023, the Appeals Council denied Plaintiff's request for review, *see*, T. 1-6, and this action followed.

### B.  Factual Background

Plaintiff was born in 1980. T.109.  In September and October of 2020, Plaintiff sought medical assistance in stopping her substance and alcohol use. T. 362, T.344. Plaintiff reported being on multiple medications, including opiates, Valium, and Ambien, for several years following multiple ear surgeries. *Id*. She reported taking six hydrocodone daily, *id*., and was admitted as an inpatient for 27 days of treatment. T. 348.  In November of 2020, following her discharge from rehab, Plaintiff

---

[1] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case, set forth as Dkt. #5 on the Docket.

was prescribed hydroxyzine, trazodone, Suboxone, and Celexa. T. 368. She also received psychiatric treatment. *Id*.

In January of 2021, Plaintiff reported sleep issues and getting anxious at night before bed. T. 432. She reported that Celexa had helped to decrease her nighttime anxiety. *Id*.  In March of 2021, Plaintiff reported that although her medications kept her from feeling like she wanted to "jump out of [her] skin 24/7," she complained of lack of motivation. T. 432. While she reported being unable to function when she experienced bouts of vertigo, the medical record does not indicate how frequently she experiences such bouts or how long they last. *Id*.

In April and June of 2021, Plaintiff complained of increased anxiety surrounding her upcoming ear surgery. T. 431; T. 469. She reported that she had been experiencing daily panic attacks, but that she had only experienced one in the past 30 days and felt that Hydroxyzine was helpful. T. 433. Plaintiff's PTSD symptoms included difficulty falling and staying asleep, irritability, outbursts of anger, poor concentration, heightened awareness of potential dangers to herself and others, vigilance, and extreme startle response. *Id*.

In July of 2021, Plaintiff reported instances of forgetfulness, T. 469, and complained on short term memory loss over the past couple of weeks. T. 495.  An MRI of Plaintiff's brain was ordered, T. 496, and in November of 2021, Plaintiff returned to Dr. Kessler and reported that her pupil continued to intermittently dilate and cause severe pain and headaches. T. 507. She also reported that her memory was much improved. *Id*.

### 1. Consultative Psychologist Janine Ippolito, Psy.D.

On April 22, 2021, Plaintiff presented to Dr. Janine Ippolito for a consultative psychiatric evaluation. T. 409. Plaintiff reported that she was psychiatrically hospitalized in 2020 for posttraumatic stress disorder, alcohol abuse, and prescription opioid dependence. *Id*. She reported that she was currently receiving mental health and substance abuse treatment through Horizon Health Services. *Id*. Plaintiff reported difficulty falling asleep and waking four times during the night. *Id*. Plaintiff reported depressive symptoms characterized by sadness, fatigue, low energy, lack of motivation, and difficulty getting out of bed. T. 410. She reported that she was binge drinking during the pandemic to cope with her depression. *Id*. Plaintiff's reported anxiety-related symptoms included anxiety, worry, nervousness, restlessness, and occasional aggressive outbursts. *Id*. Plaintiff endorsed short- and long-term memory problems and difficulty concentrating. *Id*. Upon mental status examination, Plaintiff's overall presentation was fair. Id. Her personal hygiene and grooming were satisfactory. Id. Her quality of voice was somewhat monotonous. Id. Her affect was restricted, and she reported feeling "tired." *Id*. Plaintiff's attention and concentration were impaired due to effort problems and difficulty focusing. T. 411. Her recent and remote memory skills were impaired due to memory problems and distractibility. *Id*. Her intellectual functioning was estimated to be in the average to below average range, and her general fund of information appeared somewhat limited. *Id*. Her insight was fair, and her judgment was fair to poor. *Id*.

Dr. Ippolito opined that Plaintiff had moderate limitations with understanding, remembering, or applying complex directions and instructions; using reason or judgment to make work-related decisions; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; regulating her emotions; controlling her behaviors; maintaining her well-being; and demonstrating awareness of normal hazards and taking appropriate precautions. T. 411-12. She opined that Plaintiff's limitations were due to her emotional distress, distractibility, memory problems, and history of substance abuse. T. 412. She opined that Plaintiff's psychiatric and substance abuse problems may significantly interfere with Plaintiff's daily function. *Id.* Dr. Ippolito opined that Plaintiff's prognosis was guarded given her presentation during the evaluation. *Id.* She further opined that Plaintiff would be unable to manage her own funds due to difficulty focusing and problems with math skills. *Id.* Notably, while Dr. Ippolito's report did indicate that medical reports reflected Plaintiff having a vertigo condition, *id.*, it made no mention of the duration or frequency of any episodes of vertigo.

## 2.  Consultative Examiner Dr. Hongbiao Liu

On April 22, 2021, Plaintiff presented to Dr. Hongbiao Liu for a consultative neurologic examination. T. 405. Plaintiff reported anxiety and depression, bilateral ear hearing impairment, chronic neck pain, vertigo, and left eye vision impairment. Id. Plaintiff reported that she experienced vertigo and dizziness about four times per year with associated nausea and blurred vision. *Id.*

Upon examination, Plaintiff exhibited: a normal gait, the ability to rise and walk without assistance; normal strength, no suggestion of any impairment of judgment or insight, and full strength in her upper and lower extremities. T. 406-408.  She did exhibit a limited range of motion of her cervical spine. T. 407. Her left eye vision was impaired. *Id*. She exhibited left ear hearing loss and could hear finger rubs and a forced whisper in the right ear with moderate difficulty. *Id*. Plaintiff exhibited limited range of motion in her shoulders bilaterally. *Id*.

Dr. Liu opined that Plaintiff had moderate limitation requiring acute auditory accuracy due to her hearing impairment. T. 408. He opined that Plaintiff had mild to moderate limitation for lifting, carrying, and overhead reaching. *Id*. He further opined that Plaintiff should avoid heights and heavy machinery operation due to her vertigo condition, and that she had mild limitation requiring fine visual acuity due to her left eye vision impairment. *Id*.

On May 17, 2021, Plaintiff returned to Dr. Liu for a consultative ear examination. T. 440. Plaintiff reported a history of bilateral hearing impairment since the 1980s. *Id*. Plaintiff had undergone 38 ear procedures and ear tube placements. *Id*. Plaintiff's left ear canal was closed by a surgeon due to frequent infections. *Id*. Plaintiff was able to keep normal conversation with an elevated voice and she repeated questions frequently. *Id*.

Upon examination, Plaintiff could not hear finger rub and forced whisper with her left ear. T. 441. Dr. Liu opined that Plaintiff had moderate limitations to activities requiring acute auditory accuracy. T. 442.

During visits to Horizon in May and August of 2021, Plaintiff also exhibited normal speech and cognition and appropriate thought content. T. 418; T. 454-455.

### 3. State Agency Consultants

State agency consultants Drs. D. Miller, C. Krist, and L. Haus each reviewed the available records and found that Plaintiff could perform a range of light work and had no more than moderate mental limitations. Tr. 68-83, 85-108.

### 4. Hearing Testimony

At the hearing, Plaintiff testified that she was unable to work during the closed period because she experienced severe vertigo, went into a depression and began mixing pain medication and sleeping pills, and then went into rehab. T. 43. Plaintiff reported that she had severe vertigo since 2004, when everything was removed from her left ear, including her ear drum. *Id.* She reported that in 2010, her vertigo caused her eye to dilate, and she was unable to see. Id. Plaintiff testified that in October 2020, her pain, vertigo, lack of sleep, and depression all combined to a point of severity that she was no longer able to work. T. 44. Plaintiff testified that vertigo caused her eye to dilate, which was very painful. T. 45-46. She testified that the dilation could last from a couple days up to six months. Id. She testified that she is unable to see out of her eye when it is dilated. T. 46. Plaintiff testified that her doctors had explained that her symptoms were the result of her brain trying to control both sides of her body and over-compensating for the lack of balance mechanism on the left side. *Id.*

Plaintiff testified that when she was depressed during the closed period, she did not get out of bed. T. 47. She testified that she mixed her pills with alcohol. *Id*. She testified that she stopped driving during that period because her vertigo was so bad. *Id*. Plaintiff reported that she was drinking for pain control and to sleep. *Id*. Plaintiff testified that she experienced panic attacks when she was in cars, both as a passenger and as a driver, and she would not want to leave her house. Id. Plaintiff testified that she attempted to work as a teacher's aide for about a month of 2021, but she kept experiencing panic attacks. T. 49. Plaintiff testified that she experienced panic attacks daily during the closed period. T. 57. She testified that she was unable to complete anything during that period. *Id*. She testified that when dealing with a stressful situation, she would begin to itch and shake. T. 54. When she was experiencing vertigo, she would be able to stand for 20 minutes to half an hour at a time, and that sometimes she would assistance to walk. T. 55.

At the hearing, a vocational expert testified that an individual who missed more than one day of work per month would be precluded from competitive employment. T. 66. He further testified that the employer tolerance for off-task time is up to 10% and beyond that, competitive work would be precluded. *Id*.

### C. The ALJ's Decision

The ALJ determined, under step one, that Plaintiff had not engaged in substantial gainful activity during the relevant period between October 3, 2020, and December 13, 2021. T. 17. At step two, the ALJ found that Plaintiff had severe impairments of visual impairment, decreased vision in the left eye, left hearing loss,

vestibular dysfunction, occipital neuralgia, major depressive disorder, generalized anxiety disorder, and PTSD. T. 18. At step three, the ALJ found Plaintiff did not have an impairment that met or equaled the severity of a listed impairment set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. T. 19.

The ALJ then found Plaintiff retained the residual function capacity (RFC) to perform work light work as defined in 20 C.F.R. § 404.1567(b), except she could: (1) not climb ladders, ropes, or scaffolds; (2) never crawl; (3) occasionally stoop, crouch, and kneel; (4) occasionally climb ramps and stairs; (5) frequently overhead reach; (6) work in no more than a moderate noise environment; (7) not perform jobs that require fine hearing; (8) have no more than occasionally oral communications and less than occasional phone communications; (9) not work around moving machinery and unprotected heights; (10) not drive; (11) not work in jobs requiring more than occasional fine visual acuity and no fine bilateral depth perception or fine bilateral peripheral vision; and (12) perform simple, routine, repetitive tasks in a low stress job with only occasional decision-making and only occasional changes in the work setting. T. 21-22. At step four, the ALJ found that Plaintiff, during the relevant period, was unable to perform her past relevant work as an administrative assistant. T. 26. At step five, after relying on vocational expert testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, given her RFC and vocational characteristics, such as a cleaner, collator operator, and photocopy machine operator. T. 27. Accordingly, the

ALJ found that Plaintiff was not disabled under the Act, during the relevant period. T. 28.

### D.  The Parties' Contentions

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ failed to support his decision with substantial evidence, by failing adequately to explain why, despite Plaintiff's vertigo symptoms and Dr. Ippolito's "persuasive" opinion that Plaintiff had moderate limitations in sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work, Plaintiff would nonetheless be capable of sustaining work activities on a regular and continuing basis at a competitive level during the closed period.  Dkt. # 6-1, pp. 12-15. Defendant responds that the ALJ committed no error, and that since substantial evidence supports the ALJ's decision, it should be affirmed.  Dkt. # 7-1, pp. 9-12.

## II.    LEGAL STANDARD

### A.  Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not

this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

**B. Legal Standard to Determine Disability**

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision.   *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III.  ANALYSIS

#### A.  The ALJ's Did Not Err in Evaluating the Opinion Evidence of Dr. Ippolito

Plaintiff asserts that the ALJ erred in failing adequately to explain why, despite Plaintiff's vertigo symptoms and Dr. Ippolito's "persuasive" opinion that Plaintiff had moderate limitations in sustaining concentration, performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work, Plaintiff would nonetheless be capable of sustaining work activities on a regular and continuing basis at a competitive level during the closed period.  Dkt. # 6-1, pp. 12-15. At its core, Plaintiff's contention is that the ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence.  Specifically, Plaintiff asserts that the ALJ failed to explain how the symptoms associated with Plaintiff's vestibular dysfunction, including the frequency and duration of her vertigo symptoms, were incorporated into the RFC finding.

Notwithstanding Plaintiff's assertion, however, the ALJ, in determining Plaintiff's RFC, did address the intensity, persistence and limiting effects of the symptoms of her conditions.  In that regard, the ALJ determined, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not entirely supported by the objective medical evidence." T. 22. In that regard, the ALJ cited to the fact that Plaintiff did not have difficulties with watching television, listening to the radio, and socializing with friends. T. 22 (*citing* T. 406-407; T. 441).

Moreover, the ALJ noted that Plaintiff's condition responded well to medication. As he noted, "conservative treatment consisting of medication management and steroid injections was generally effective in addressing the claimant's symptoms…treatment notes show that the claimant does very well with occipital nerve blocks." T. 23 (*citing* T. 319-342).

Moreover, the claimant reported a wide range of activities of daily living, such as cleaning the house, laundering, and shopping once a week that is inconsistent with her allegations of significant occipital neuralgia pain. T. 23 (*citing* T. 441). Review of systems in July and November 2021 were negative for arthralgias, myalgia and muscle weakness, and during visits at that time, Plaintiff denied headaches, numbness/tingling and vertigo. T. 23 (*citing* T. 502; T. 507; T. 512). Moreover, physical examination showed no neurological or musculoskeletal deficits. *Id*. (*citing* T. 504; T. 509-511). While the claimant's pupil would intermittently dilate and cause pain, it was noted that medication relieved her symptom. *Id*.  (*citing* T. 511).

In addition, the ALJ determined that there was a lack of objective evidence regarding the claimant's vertigo to support a more restrictive limitation than assessed. T. 23. As noted, "[p]rogress notes during the period at issue documented little evidence of attacks of balance disturbance. The claimant's gait was described as normal. She was able to rise from a sitting to standing position without assistance. She was able to walk on her heels and toes without difficulty." T. 23 (*citing* T. 339; T. 406).

As noted by the ALJ, aside from Plaintiff's own subjective descriptions, the record was devoid of any detailed description of vertiginous episodes, including notation of frequency, severity, and duration of attacks to the extent described by the claimant on progress notes during the period at issue.  Plaintiff's progress notes from medical visits during July and November 2021 indicate that she reported no bouts with vertigo during those visits and that her vertigo was being successfully treated with medication. (T. 502; T. 507). Further, there are no MRI studies of the claimant's brain showing significant abnormalities.

In view of the foregoing, Plaintiff's challenge to the RFC finding—that the RFC failed to accommodate her vertigo symptoms—is unavailing. The ALJ did expressly accommodate Plaintiff's vertigo symptoms in part by adopting Dr. Liu's opinion that Plaintiff should avoid heights and use of heavy machinery due to her vertigo. T. 24-25 (*citing* T. 408). In addition, the ALJ found the opinion of consultative examiner Dr. Janine Ippolito to be persuasive, and Dr. Ippolito's opinion that Plaintiff had no more than moderate mental limitations supported the ALJ's RFC finding. T. 25-26 (*citing* T. 411-12).  The ALJ also found persuasive the medical findings from the State agency consultants, Drs. D. Miller, C. Krist, and L. Haus, who each reviewed the available records and found that Plaintiff could perform a range of light work and had no more than moderate mental limitations. Tr. 68-83, 85-108.

Moreover, while Plaintiff also criticizes the ALJ for failing "to demonstrate that he considered whether Plaintiff would be able to maintain acceptable attendance or stay on task at a competitive level when she was experiencing vertigo episodes,"

Dkt. #6-1, p. 14,  such criticism is unfounded. "'Maintaining regular attendance, performing tasks independently, performing low stress and simple tasks, and/or responding appropriately to changes in a routine work setting' are appropriately accommodated by a limitation to unskilled work." *Melissa L. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06667 EAW, 2022 WL 593452, at *6 (W.D.N.Y. Feb. 28, 2022)(quoting *Hillman v. Comm'r of Soc. Sec.*, No. 17-CV-6825L, 2019 WL 2409661, at *2 (W.D.N.Y. June 7, 2019) (collecting cases); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [the plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations. Although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform ... unskilled work was well supported."); *Cory W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1424-DB, 2021 WL 5109663, at *7 (W.D.N.Y. Nov. 3, 2021) ("[L]imitations to simple, unskilled work account for moderate and even marked limitations in an ability to deal with stress."); *Landers v. Colvin*, No. 14-CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. March 29, 2016) ("The determination that plaintiff is limited to simple, repetitive and routine tasks accounts for plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule and maintaining regular attendance." (internal quotation marks omitted)).  Stated simply, the record here demonstrates that the ALJ did consider the Plaintiff's vertigo symptoms and address them in his RFC by limiting Plaintiff, *inter alia*, to light work, with no driving or machinery operation, performing simple, routine, repetitive tasks in a low stress job with only occasional decision-making and only occasional changes in the work

setting.  As the foregoing authority makes clear, the RFC here was sufficient to address the limitations expressed by Dr. Ippolito and determined by the record overall by the ALJ.

Ultimately, "the ALJ bears 'the final responsibility' for making RFC determinations." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing 20 C.F.R. § 404.1527(d)(2)). "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *See Richardson v. Perales*, 402 U.S. 389, 399 (1971)("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *see also*, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating that an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").  Because the RFC finding here is consistent with the record on the whole, there is no basis for this Court to disturb the Commissioner's determination.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. # 6) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. # 7) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  August 27, 2024
          Buffalo, New York